[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF ATTORNEY REFEREE FINDING OF FACTS
1. On August 29, 1986 the plaintiffs, Joseph F. Legg and Bonnie Legg, purchased from the defendant, Esther B. Williams, for the sum of $70,000.00, property described as a certain tract of land known as 60 Old Black Point Road in East Lyme, Connecticut, by warranty deed with survivorship (Plaintiff's Exhibit 1), recorded in Volume 223, Page 648, of the land records of the Town of East Lyme.
2. In said deed, the defendant, Esther B. Williams covenanted with the plaintiffs that she was well seized of the premises, had a good right to bargain and sell the same by warranty deed, and that the premises were free of all encumbrances whatsoever except as set forth in the deed.
3. The defendant, Esther B. Williams, further bound herself to warrant and defend the premises to the plaintiffs against all claims and demands whatsoever except as set forth in the deed.
4. The legal description in said deed from Esther B. Williams to the plaintiffs described the property as being known and designated as Lots No. 1 and 2 on a plan entitled "Black Point Heights, Plan No. 1, property on Black Point Road in the Town of East Lyme, Connecticut belonging to Vincent J. Barone and Livy S. Huntly, Feb. 1947, scale 1" = 100 ft., L.E. Daboll C. Engr., New London, CT.", as on file in the office of the Town Clerk of said Town of East Lyme.
5. The legal description in said deed further described the property as having a southerly boundary 217 ft., more or less, an easterly boundary 100 ft., more or less, a northerly boundary 183 ft., more or less, and a CT Page 1163 westerly boundary on Black Point Road 122 ft., more or less.
6. The legal description in said deed also further described said property as being bound southerly by land now or formerly of John T. Harrington, easterly by Lot 26 and 25, northerly by lot 3, and westerly by Black Point Road, all as shown on the plan entitled "Black Point Heights, Plan No. 1."
7. Said deed listed no encumbrances, easements or rights of way burdening the property.
8. Prior to purchasing this property, the plaintiffs met with the defendant, Esther Williams, who told them that she did not know precisely where the boundaries of her property were, but that her property had been surveyed and pins had been set in the corners of the tract of land.
9. The plaintiffs looked for surveying markers, but were unable to locate any surveying markers on the northerly boundary of the property, the boundary between Lots 2 and 3 as shown on the plan referred to as "Black Point Heights — Plan No. 1,"; finding only a stake in the southwest corner of the property.
10. The northerly boundary of the property purchased by the plaintiffs was not precisely pointed out by Esther Williams prior to the sale to the plaintiffs.
11. Esther Williams provided the plaintiffs with a sketch map of the property (Plaintiff's Exhibit 2) prior to their purchase of the property.
12. Said sketch map shows the dimensions of the property to be purchased by the plaintiffs as 122 feet along Old Black Point Road; 217 feet along its southerly border; 100 feet along its easterly border; and 183 feet along its northerly border.
13. This sketch map does not identify or locate any monuments or permanent markers; rather it purports to show the location of the property on Old Black Point Road and the dimensions of the lot.
14. The plaintiffs did not rely on any statements of Esther Williams as to the precise location of the northerly boundary of the property they were purchasing.
15. The plaintiffs did not have the land surveyed prior to purchasing it nor were markers located denoting the northerly boundary prior to their purchase of it.
16. Prior to the sale Esther Williams advised the plaintiffs the parcel of land was narrow, wet, and contained ground which was hard pan so that it would require an engineered septic system. CT Page 1164
17. Esther Williams had acquired the parcel of land sold to the plaintiffs from her father who had been one of the original developers of the sub-division.
18. The parcel of land purchased by the plaintiffs had never been developed and at the time of the purchase was heavily overgrown.
19. The plaintiffs purchased this lot intending to build a home on it.
20. After their purchase of the property and incident to the planning of the same the plaintiffs questioned the location of the northerly boundary of their property and had surveying work done by J. Robert Pfanner and Associates, P.C.
21. The property to the north of the plaintiff's is owned by the defendants Robert A. Tardio and Joy A. Tardio.
22. The Tardios acquired said property, known as 58 Old Black Point Road, on July 22, 1982 by Warranty Deed from Dorothy Houle (Defendant Tardios' Exhibit 12) recorded in Volume 193 Page 470, of the land records of the Town of East Lyme.
23. The Tardios' predecessor in title, Dorothy Houle and her deceased husband, Leon A. Houle, had acquired the tract of land known as 58 Old Black Point Road on December 31, 1959 by Warranty Deed from Nick Disipio (Defendant Tardios' Exhibit 6) recorded in Volume 84 Page 542, of the Land Records of the Town of East Lyme.
24. In each of these deeds in the Tardios' chain of title, the property known as 58 Old Black Point Road was described as "those certain lots or parcels of land situated in the Town of East Lyme designated as Lots Numbers 3 and 4 on a Map entitled Black Point Heights — Plan No. 1 — Property on the Black Point Road, in the Town of East Lyme, Connecticut, Belonging to Vincent J. Barone and Libby S. Huntly — February, 1947, Scale 1 inch = 100 feet, from the office of L.E. Daboll, C. Engineer, New London, Connecticut which map is on file in the Office of the Town Clerk of said Town of East Lyme."
25. Said property is further described in these deeds as lying on the easterly side of Black Point Road bounded southerly, 183 feet, more or less, by lot number 2 on said map.
26. When the Houles purchased said property known as 58 Old Black Point Road in 1959 the property had not been developed and was heavily wooded and overgrown.
27. The Houles, in 1960, had a builder clear their property and construct a house for them on the site.
28. After the house was constructed the Houles commenced to occupy the CT Page 1165 same and seeded and maintained the land cleared by the builder.
29. The Houles, until Leon Houle's death, and Dorothy Houle thereafter, resided at 58 Old Black Point Road until its sale to the Tardios on July 22, 1982, a period of approximately 22 years.
30. In the early 1960's the Houles constructed an addition on the southerly side of the house at 58 Old Black Point Road and such addition existed for more than 15 years prior to the sale of the property to the Tardios.
31. During the time 58 Old Black Point Road was occupied by the Houles or by Dorothy Houle a strip of lawn was maintained between the southerly side of the Houle's house, both without and with the addition, and the adjoining overgrown property then owned by Esther Williams.
32. Prior to the sale of the property to the Tardios the Houles used the southerly portion of their property in a variety of ways including as a dog run and in connection with family cook outs and picnics.
33. A septic system including a leaching field located on the southerly portion of the lot serviced the house at 58 Old Black Point Road.
34. George Calkins, Sanitarian for the Town of East Lyme, inspected the property at 58 Old Black Point Road in the Spring of 1983 and determined that its sewage disposal system was inadequate and the septic system was in failure.
35. Then, and on one or more other occasions when he inspected 58 Old Black Point Road, George Calkins noted septic waste was visible on the ground above the septic system.
36. At the request of the plaintiffs George Calkins set a stake in the ground at a point he believed to be the southerly end of the leaching field servicing 58 Old Black Point Road during one of his inspections.
37. Given the trees and overgrowth present on the properties prior to being cleared, it would have been necessary to build the septic system including the leaching field on property which had been cleared.
38. The land under which the septic system and leaching field is located was cleared by the Houles' builder and has been maintained as cleared land by the Houles and the Tardios since a house was constructed for the Houles in 1960.
39. It appears from the photographic exhibits (Defendant Tardio's 1, 2, 3, 5, 7, 8, 9, 10 and 11) that the quantity of cleared ground maintained by the Tardios is somewhat greater and extends further southerly then that originally maintained by the Houles. CT Page 1166
40. The demarcation between the cleared land of 58 Old Black Point Road and the overgrown land of 60 Old Black Point Road was not fixed and is subject to natural changes such that the precise location cannot be consistently determined.
41. The cleared land at 58 Old Black Point Road has, however, since 1960, consistently and continuously included the land under which the septic system including the leaching field was located.
42. The legal descriptions in the deeds by which the plaintiffs, Legg, and the defendants, Tardio, acquired their respective properties both reference the same plan entitled "Black Point Heights Plan No. 1" (Plaintiffs' Exhibit 11) and the boundary between their property is described in their respective deeds as 183 feet, more or less.
43. This dispute concerns the precise location of this boundary commencing on Old Black Point Road and running between and separating their properties.
44. At the plaintiff's request J. Robert Pfanner and Associates, P.C., did a survey and claimed to have recovered a drill hole on Old Black Point Road and an iron pipe on the easterly side of these properties utilizing which the disputed boundary, if drawn connecting these, would be 194.13 feet and run through the Tardios' house on its southerly end. (Defendant Tardio Exhibit 4).
45. J. Robert Pfanner and Associates, P.C., subsequently rejected these markers as proper indicators of the boundary, surveyed the entire subdivision at the plaintiff's request, and produced a class A-2 survey, revised to April 27, 1987, showing the disputed boundary to be 194.85 feet in length and located slightly south of the Tardios' house (Plaintiffs' Exhibit 8).
46. This survey prepared by J. Robert Pfanner Associates, P.C., depicts the plaintiff's lot as narrower but deeper than described in their deed; showing the westerly boundary of the plaintiff's property to be approximately 8 1/2 feet less than as described in their deed, the northerly boundary of their property to be approximately 12 feet longer than as described in their deed, the easterly boundary to be approximately 6 feet less than as described in their deed, and the southerly boundary to be approximately 8 feet longer than as described in their deed.
47. The plaintiff's property as surveyed by J. Robert Pfanner 
Associates. P.C. and depicted in Plaintiffs' Exhibit 8 contains 21,415 square feet.
48. There was no evidence presented as to the square footage contained in the plaintiffs' property as described in the deed by which they obtained the same from Esther Williams. CT Page 1167
49. The Tardios and the Houles, their predecessor in title, had for more than 15 years together, openly, visibly and exclusively used and maintained a cleared and seeded area along the southerly side of the house at 58 Old Black Point Road running into the back yard of the same.
50. The leaching field servicing 58 Old Black Point Road is located underground under this cleared and maintained area.
51. The Houles used and maintained this land believing they owned the same.
52. The Tardios used and maintained this land believing they owned the same.
53. The land so continuously used and maintained by the Houles and Tardios encroaches approximately 10 feet at its deepest point across the boundary line as the same was determined by J. Robert Pfanner Associates, P.C., and depicted in Plaintiff's Exhibit 8.
54. A stake marking this point was set by George Calkins, Town Sanitarian, and is depicted and noted as "Stake set by town sanitarian marking end of trenck (sic)" on a Plot Plan prepared by J. Robert Pfanner 
Associates, P.C. (Plaintiff's Exhibit 9).
55. The Tardios have established by clear and convincing evidence that Esther Williams was ousted from possession of this portion of her property by the Tardios and by Leon and Dorothy Houle for an uninterrupted period of more than 15 years by an open, visible and exclusive possession without the consent of Esther Williams.
56. Robert L. Boucher, a land surveyor, examined 58 Old Black Point Road and drew a plot plan depicting, among other things, the easterly demarcation between cleared land and overgrown land as it existed on the Tardio and Legg properties in August of 1988.
57. The photographic evidence and testimony of several witnesses indicates the easterly demarcation between cleared and overgrown land remained constant from 1960 to August 1988.
58. The parcel of land of which the Tardios have established title by adverse possession commences at a point on the easterly side of Old Black Point Road which point is the northwest corner of the plaintiffs' parcel of land as depicted in Plaintiffs' Exhibit 8; thence running in a generally easterly direction to the stake set by George Calkins as depicted in Plaintiffs' Exhibit 9; thence continuing easterly along the same course to the easterly line marking the change from cleared land to overgrown land as the same is depicted on Defendant Tardios' Exhibit 13; thence running N 19' 28' 10" E to the boundary line as located and drawn by J. Robert Pfanner Associates, P.C. and depicted in Plaintiffs' Exhibit 8. CT Page 1168
59. This piece of property so described contains less than 2036 square feet as it is not encompassed by the boundaries set forth in Defendant Tardios' Exhibit 13.
60. The boundary between the rest of the Legg and Tardio properties, being the rear portion of the Tardio property which has remained overgrown and the rear portion of the plaintiffs' property, excepting the property described in Finding 58, is the boundary line determined by J. Robert Pfanner Associates, P.C. and depicted in Plaintiffs' Exhibit 8.
62. As a result the property purchased by the plaintiffs was diminished in value by a figure of $4,500.00 as of August 29, 1986, considering the location and size of the parcel of land adversely possessed by the Tardios; its significance to the value of the entire tract purported to have been conveyed to the plaintiffs; and its location with regard to the adjoining tracts of land.
63. The plaintiffs are entitled to interest at the legal rate on this sum of $4,500.00 running from August 29, 1986 as equitably due them under the facts and circumstances of this case.
64. The plaintiffs did not have specific house plans drawn up until after they had purchased Esther Williams' property and their plans were drawn at a time when the northerly boundary of their property was uncertain.
65. The plaintiffs initiated this action by Writ, Summons and Complaint returnable to the Superior Court for the Judicial District of New London November 3, 1987 seeking to 1) quiet title as to the property they purchased; 2) obtain possession of and other relief with respect to land upon which they claimed the Tardios encroached; and 3) damages and/or equitable relief against Esther Williams.
66. The surveying work performed by and surveys or plans prepared by J. Robert Pfanner Associates, P.C. were completed by June 12, 1987 and were not prepared or performed in defense of the plaintiffs' title.
67. By pleading dated March 24, 1988 the Tardios, by Special Defense, claimed to own a portion of the land claimed by the plaintiffs and thereby required a defense of the plaintiffs' title.
68. The plaintiffs have incurred legal fees and incidental costs for the services rendered by their attorney $6,000.00 of which is a reasonable fee related to the issues of title and defending the same as raised in this litigation.
69. The actions or omissions of Esther Williams were not violative of Connecticut General Statutes Section 42-110a et seq.
CONCLUSIONS CT Page 1169
1. The defendant, Esther Williams, was the owner by record title of a certain tract of land located in East Lyme known and designated as Lots Numbers 1 and 2 on a plan entitled "Black Point Heights, Plan No. 1, Property on the Black Point Road in the Town of East Lyme, Connecticut, belonging to Vincent J. Barone, and Livy S. Huntly, Feb. 1947, Scale 1" = 100', L.E. Daboll C. Engr., New London, CT.", as on file in the office of the Town Clerk of said Town of East Lyme.
2. Prior to August 29, 1986 Esther Williams had been ousted of possession of a portion of this land by the adverse, open, visible, exclusive, continuous, and notorious possession and use of the same by the defendants, Tardio, and the Houles, their predecessors, which possession and use was established by clear and convincing evidence.
3. The deed from Esther Williams to the plaintiffs dated August 29, 1986 and recorded at Volume 223 Page 648 of the land records of the Town of East Lyme was void insofar as it attempted to convey that portion of the land for which record title existed in Esther Williams, but of which she had been ousted by the adverse possession of the Tardios pursuant to Connecticut General Statutes Section 47-21.
4. This deed of Esther Williams to the plaintiff failed to convey that portion of the land of which Esther Williams had been ousted to the plaintiffs although record title would otherwise appear to be in the plaintiffs.
5. The existence of this portion of land from which Esther Williams had been ousted and its non-disclosure in the deed from Esther Williams to the plaintiffs constituted a breach of the covenant of seisin and the covenant of warranty given with said deed.
6. The plaintiffs by this action, have, among the reliefs claimed, sought to quiet title to the property they allege to have purchased from Esther Williams; an action governed by the provisions of Connecticut General Statute Section 47-31.
7. The defendants, Tardio, have made no affirmative claim by counterclaim of ownership over the land they claim to have adversely possessed of Esther Williams; but they have disclosed in their answer by special defense that they claimed title by adverse possession to a portion of the land claimed by the plaintiffs thereby complying with the requirements of Connecticut General Statutes Section 47-31 (d).
8. The defendants, Tardio, have established by clear and convincing evidence that they are the owners of a certain portion of the tract of land claimed by the plaintiffs, being that portion of the land commencing at a point on the easterly side of Old Black Point Road being the southwest corner of other land of the defendants, Tardio, and the northwest corner of the plaintiffs' land, as shown on Plaintiff's Exhibit 8; thence running in a generally easterly direction to a point noted as "stake set by CT Page 1170 Town Sanitarian marking end of trenck (sic)" as shown on Plaintiff's Exhibit 9; thence continuing easterly along the same course to the easterly line marking the change from cleared land to overgrown land as the same is depicted on Defendant Tardios' Exhibit 13; thence running north 19 degree 28' 10" east to the boundary line between the Tardio and Legg properties as the same is located by J. Robert Pfanner and Associates, P.C., and depicted in Plaintiffs' Exhibit 8.
9. The plaintiffs have established title by deed to all of that property conveyed to them by Esther Williams by deed dated August 29, 1986 and recorded in Volume 223 Page 648 of the East Lyme Land Records except that portion hereinbefore described in Conclusion 8 of which the Tardios have established title by adverse possession.
10. The defendants, Tardio, have failed to establish by clear and convincing evidence that they hold title by adverse possession to any additional portions of the land to which the plaintiffs have established title by deed.
11. The septic system of the Tardios servicing 58 Old Black Point Road is entirely on land owned by the Tardios and the plaintiffs have failed to establish that it encroaches upon their land.
12. The defendant Esther Williams has failed to prove that the Tardios' septic system encroaches upon land she properly conveyed to the plaintiffs and therefore has not proven the allegations of her amended cross complaint.
13. As a result of the breaches of the covenants of seisin and warranty given by Esther Williams by her deed, the value of the land purchased by the plaintiffs was diminished by $4,500.00 at the time of purchase and the plaintiffs are entitled to damages in this sum.
14. The plaintiffs are further equitably entitled to interest at the legal rate on this $4,500.00 to be calculated from August 29, 1986.
15. As a further result of the breaches of covenants by the defendant, Esther Williams, the plaintiffs were required to incur and expend reasonable attorneys' fees and incidental costs related to the same in the sum of $6,000.00 and are entitled to recover the same without interest as additional damages.
16. The plaintiffs have failed to establish a claim for damages and other relief against the defendant, Esther Williams pursuant to Connecticut General statutes Section 42-110a et seq., the Connecticut Unfair Trade Practices Act.
RECOMMENDATIONS
1. Judgment should enter for the plaintiffs to recover of the defendant, Esther Williams, the sum of $4,500.00 together with interest at CT Page 1171 the legal rate calculated from August 29, 1986 together with additional damages of $6,000.00 without interest.
2. Judgment should enter for the defendants, Tardio, on the Second Count of the Complaint.
3. Judgment should enter for the defendants, Tardio, on the Cross Complaint of Esther Williams.
4. The Court should quiet and settle title to the disputed property to be in the defendants, Tardio, as to that portion of the land commencing at a point on the easterly side of Old Black Point Road being the southwest corner of other land of the defendants, Tardio, and the northwest corner of the plaintiffs' land, as shown on Plaintiff's Exhibit 8; thence running in a generally easterly direction to a point noted as "stake set by Town Sanitarian marking end of trenck (sic)" as shown on Plaintiff's Exhibit 9; thence continuing easterly along the same course to the easterly line marking the change from cleared land to overgrown land as the same is depicted on Defendant Tardios' Exhibit 13; thence running north 19 degree 28' 10" east to the boundary line between the Tardio and Legg properties as the same is located by J. Robert Pfanner and Associates, P.C., and depicted in Plaintiffs' Exhibit 8, as against the plaintiffs who have no estate, interest or encumbrance in the same; and to be in the plaintiffs, Legg, as to all remaining property in the parcels conveyed to them by deed by Esther Williams recorded in Volume 223 Page 648 of the East Lyme Land Records.
BY: MICHAEL E. DRISCOLL Trial Referee.